OWNER–OPERATOR INDEPENDENT DRIVER ASSOCIATION, INC., Shane Paul, Steven Bussone, Dale Stewart, Kenneth Hinzman, and William Meck, On behalf of themselves and other similarly situated, Plaintiffs,

v.

USIS COMMERCIAL SERVICES, INC., d/b/a Dac Services, Defendant.

No. CIV. 04RB1384CBS.

United States District Court, D. Colorado.

March 7, 2005.

Paul D. Cullen, Sr., Esq., Paul D. Cullen, Jr., Esq., Randall S. Herrick–Stare, Esq., The Cullen Law Firm, PLLC, Washington, DC, for Plaintiffs.

Larry D. Henry, Esq., Boone, Smith, Davis, Hurst and Dickman, PC, Tulsa, OK, Richard L. Harring, Esq., Grimshaw & Harring, PC, Denver, CO, Daniel R. Barney, Esq., Scopelitis Garvin Light & Hanson, Washington, DC, Robert L. Browning, Esq., Russell Jay Taylor, Jr., Esq., Indianapolis, IN, for Defendant.

## ORDER RE: MOTION TO DISMISS

BLACKBURN, District Judge.

Before me is defendant's Motion to Dismiss [# 5], filed August 4, 2004. I have jurisdiction over this case under 28 U.S.C. §§ 1331 (federal question) and 1337 (proceeding arising under an act of Congress regulating commerce). I grant the motion in part and deny it in part.

This putative class action implicates the requirements of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Defendant is an investigation and security services company that provides services to the transportation industry under the name DAC Services. In that capacity, defendant gathers from and disseminates to affiliated motor carriers information regarding truck drivers' employment histories. Of particular relevance in this case, defendant utilizes a Termination Record form that allows employers to transmit information about drivers who have been terminated from employment. This information is then made available for purchase to prospective employers.

Plaintiffs, independent truck owner-operators and the business association that represents them, claim that the Termination Record form, which was designed by defendant in collaboration with motor carriers, contains a variety of vague, ambiguous, and incomplete terms and categories that result in inaccurate information about drivers' work histories being disseminated to prospective employers. The forms are gathered and disseminated without drivers' authorization. Defendant

provides no mechanism for notifying drivers when the forms are submitted or disseminated or for allowing drivers to review or comment on the events the forms reflect. Plaintiffs therefore seek a declaration that the forms violate the FCRA, an injunction prohibiting defendant from continuing to gather and disseminate them, and disgorgement of all profits realized by defendant related to use of the forms. They also seek compensatory and punitive damages for defendant's failure to provide notice to or require authorization from drivers, as well as its failure to adopt reasonable procedures to ensure the accuracy of the forms.

Defendant has moved to dismiss three of the four counts of plaintiffs' complaint on the ground that they do not state causes of action on which relief can be granted. In ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), I must determine whether the allegations set forth in the complaint, if true, are sufficient to state a claim within the meaning of Fed.R.Civ.P. 8(a). "[T]he complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Daigle v. Shell Oil Co.,* 972 F.2d 1527, 1533 (10th Cir.1992). The complaint must be construed in the light most favorable to plaintiffs, and its allegations must be taken as true. *Robinson v. City and County of Denver* 39 F.Supp.2d 1257, 1262–1263 (D.Colo.1999) (citing *Daigle,* 972 F.2d at 1533). However, I need not assume that plaintiffs "can prove facts which [they have] not alleged or that the defendant[ ] ha[s] violated the . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983).

The first question is whether the three forms of equitable relief plaintiffs seek—an injunction, declaratory judgment, and disgorgement—are available under the FCRA. Those sections of the FCRA that create a private right of action under the statute provide that a consumer may recover actual or statutory damages, costs, attorney's fees, and, in the case of a willful violation, punitive damages. *See* 15 U.S.C. §§ 1681n(a) & 1681o (a). Conspicuously absent from the enumerated listing of available remedies is any provision for injunctive or other equitable forms of relief. Of course, "[a]bsent the clearest command to the contrary from Congress, federal courts retain their equitable powers to issue injunctions in suits over which they have jurisdiction." *Califano v. Yamasaki,* 442 U.S. 682, 705, 99 S.Ct. 2545, 2559, 61 L.Ed.2d 176 (1979). Thus, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Amoco Production Co. v. Village of Gambell, Alaska,* 480 U.S. 531, 542, 107 S.Ct. 1396, 1402, 94 L.Ed.2d 542 (1987) (citation and internal quotation marks omitted).

Nevertheless, courts that have considered this same issue have overwhelmingly concluded that the FCRA precludes private litigants from seeking equitable relief. These holdings are based on several interrelated considerations. First, courts have noted that, in contrast to the provisions delineating the remedies available to private litigants, the FCRA affirmatively grants the Federal Trade Commission ("FTC") authority to pursue injunctive relief. *See* 15 U.S.C. §§ 1681s(a) & 45(b).[1]

---

1. Plaintiffs point out that the FTC's authority    to seek equitable relief derives not from the

Thus, under the principle that "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies," *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974), courts have concluded that the omission of equitable relief from the delineated remedies available under sections 1681n and 1681o demonstrates Congress's intent to preclude private litigants from obtaining such forms of relief. *See Washington v. CSC Credit Services Inc.*, 199 F.3d 263, 268 (5th Cir.), *cert. denied*, 530 U.S. 1261, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000); *In re Trans Union Corp. Privacy Litigation*, 211 F.R.D. 328, 339 (N.D.Ill.2002); *Mangio v. Equifax, Inc.*, 887 F.Supp. 283, 285 (S.D.Fla.1995); *Kekich v. Travelers Indemnity Co.*, 64 F.R.D. 660, 668 (W.D.Pa. 1974). In a similar vein, courts also note that the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, which contains a similar civil liability provision authorizing monetary damages but not specifically referring to injunctive relief, has been interpreted to preclude private actions for injunctive relief. *See Washington*, 199 F.3d at 268 n. 4 (collecting cases); *Bumgardner v. Lite Cellular, Inc.*, 996 F.Supp. 525, 527 (E.D.Va.1998). The subsequent enactment of section 1681u, specifically authorizing injunctive relief in certain types of private actions against the government, *see* 15 U.S.C. § 1681u(m), also has been cited as further highlighting the unavailability of such re-

lief in other types of private actions under the FCRA. *See Washington*, 199 F.3d at 269.

The courts also have focused on the language of section 1681p, which grants the district courts jurisdiction "to enforce any *liability* created under" the FCRA, *see* 15 U.S.C. § 1681p (emphasis added), but not to enforce *compliance* with the statute. Relying again on similar interpretations of the FDCPA, the courts have found that this language further evidences a congressional intent to preclude equitable forms of relief in private actions. *See Ditty v. CheckRite Ltd., Inc.*, 973 F.Supp. 1320, 1338 (D.Utah 1997); *Mangio*, 887 F.Supp. at 284–85.

The few cases that have decided differently are not persuasive authority for a contrary view.[2] Although the district court in *Greenway v. Information Dynamics, Ltd.*, 399 F.Supp. 1092 (D.Ariz.1974), *aff'd per curiam*, 524 F.2d 1145 (9th Cir. 1975), *cert. denied*, 424 U.S. 936, 96 S.Ct. 1153, 47 L.Ed.2d 344 (1976), granted injunctive relief to a class of private litigants under the FCRA, it does not appear the plaintiffs' right to such relief was ever challenged, *id.* at 1096–97, 96 S.Ct. 1153, and the issue was not raised on appeal either, *Greenway*, 524 F.2d at 1146. As for the decision in *Andrews v. Trans Union Corp.*, 7 F.Supp.2d 1056 (C.D.Cal. 1998), *aff'd in part*, 225 F.3d 1063 (9th Cir.2000), *rev'd*, 534 U.S. 19, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001), although the court noted that other courts had found equitable relief inappropriate under the FCRA,

statute itself but from the FTC's own enabling statute. However, the FCRA clearly incorporates the enforcement provisions by reference. *See* 15 U.S.C. § 1681s(a).

**2.** Nor am I persuaded by plaintiffs' undeveloped argument that this line of cases may be wholly inapposite because the Secretary of Transportation, and not the FTC, might have

enforcement authority over this action. The Secretary has authority to enforce actions under subtitle IV of Title 49 "with respect to all carriers subject to the jurisdiction of the Surface Transportation Board." 15 U.S.C § 1681s(b)(4). Without attempting to parse all aspects of this section, suffice it to say that this is not an action under Title 49 and no party is a carrier.

it determined that the plaintiff was entitled to an injunction pursuant to her state law claim, *id.* at 1083–84.

■ Having reviewed these cases and the statutory authority they interpret, I must agree with the conclusion that equitable relief is not available to private litigants under the FCRA. Accordingly, Counts I and IV of plaintiffs' complaint fail to state cognizable claims and will be dismissed.

■ Defendant also challenges the viability of Count II of the complaint, which alleges, *inter alia,* that defendant's receipt of Termination Record forms without notifying the subject drivers or obtaining their authorization violates the FCRA. (*See* Complaint at 23–25, ¶¶ 38–44.)[3] Defendant first argues that the forms are not "consumer reports" within the meaning of the statute. Under the FCRA, a "consumer report" is defined as

any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's ... character, general reputation, [or] personal characteristics ... which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—

.    .    .    .    .

(B) employment purposes[.]

15 U.S.C. § 1681a(d)(1)(B). Excluded from this broad definition, however, is "any report containing information solely as to transactions or experiences between the consumer and the person making the report." *Id.* § 1681a(d)(2)(A)(i); *see also* 16 C.F.R. Pt. 600, App. § 603, cmt 7(a)(1)-(3). Defendant claims the Termination Report forms fall within this exception because they merely reflect transactions between the submitting motor carriers and

their former employees. However, plaintiffs' complaint alleges, *inter alia,* that the Termination Report forms include not only information regarding the interactions between motor carriers and drivers, but also information about interactions between drivers and shippers. (*See* Complaint at 10, ¶ 19(a) & at 15, ¶ 20.) Accepting these allegations as true, which I must at this early junction, the forms may contain information beyond the first-hand experience of the employer. Dismissal therefore is not warranted on this basis.

■ Defendant next argues that the motor carriers that provide the completed forms are not "consumer reporting agencies." As defined by the FCRA,

[t]he term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). Clearly, the employer motor carriers are consumer reporting agencies under this expansive definition. The cases on which defendant relies are inapposite. *See Rush v. Macy's New York, Inc.,* 775 F.2d 1554, 1557 (11th Cir. 1985) (retailer which issued single report on consumer not a crediting reporting agency under the FCRA); *Rice v. Montgomery Ward and Co.,* 450 F.Supp. 668, 670 (M.D.N.C.1978) (defendant which obtained credit reports on plaintiff for use in litigation not a consumer reporting agency under the FCRA). Unlike the defendants in *Rush* and *Rice,* who were sought to be

---

3. Count II also challenges defendant's sale of the Termination Report forms to prospective employers. Defendant's motion does not implicate this aspect of the complaint.

held liable for isolated instances of issuing or obtaining a consumer report, the motor carriers who supply defendant with the Termination Report forms do so regularly and for a fee. This argument therefore provides no grounds for dismissal.

Lastly, defendant maintains that the transmission of the forms to it is not an "adverse action" under the FCRA. *See* 15 U.S.C. § 1681a(k)(1) (defining "adverse action" for purposes of the FCRA). However, plaintiffs' claim in this regard rests on the contention that defendant, in procuring the Termination Report forms, failed to comply with the certification and notice provisions of 15 U.S.C. §§ 1681b(b)(1)(A)(i) and 1681b(b)(2). The duties imposed by these sections are separate and distinct from the duties that attend the taking of an adverse action. *See* 15 U.S.C. § 1681b(b)(3). Defendant's arguments therefore are inapposite.

**THEREFORE, IT IS ORDERED**, as follows:

(1) That defendant's Motion to Dismiss [# 5], filed August 4, 2004, is **GRANTED IN PART** and **DENIED IN PART**;

(2) That the motion is **GRANTED** as to Counts I and IV of plaintiffs' complaint, and those counts are **DISMISSED WITH PREJUDICE**;

(3) That the motion is in all other respects **DENIED**.